ORIGINAL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 16 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

|  |  |
|---|---|
| QUALSERV CORPORATION on Behalf of Itself and all Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| KASON INDUSTRIES INC., PETER A. KATZ, and JOHN DOE 1, | ) ) ) |
| Defendants. | ) ) ) |

Case No.

**1 10·CV-1849**

**COMPLAINT**
**CLASS ACTION**

WSD

**JURY TRIAL DEMANDED**

QualServ Corporation ("Plaintiff"), on behalf of itself and all others

similarly situated, brings this action for treble damages, injunctive relief and costs

of suit under Section 1 of the Sherman Act and Section 4 of the Clayton Act

against Kason Industries Inc. and Peter A. Katz, (collectively "Defendants"), and

alleges, on information and belief, but on personal knowledge as to allegations

relating to Plaintiff, as follows:

## NATURE OF CLAIM

1.      This case arises from an unlawful conspiracy among producers of

food service equipment component hardware to fix prices, rig bids, and allocate

customers for food service equipment component hardware sold in the United

States and elsewhere from December 2004 until at least December 2008, in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

2.     As a result of this illegal conspiracy, Defendants charged supra-competitive prices for food service equipment component hardware sold in the United States and elsewhere, thereby injuring Plaintiff and members of the proposed Class (defined below).

3.     On May 6, 2010, Defendants Kason Industries Inc. and Peter A. Katz, its former president, agreed to plead guilty to a one-count felony charge filed by the United States Department of Justice ("DOJ") in the United States District Court for the Northern District of Georgia.  The information charged a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for conspiracy to allocate customers of food service equipment component hardware with certain unnamed co-conspirators between December 2004 and at least December 2008.

## JURISDICTION AND VENUE

4.     This action arises under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§  1, 15 and 26.

5.     This Court has jurisdiction under Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 22 and 26, and 28 U.S.C. §§ 1331 and 1337.

6.     Venue is proper in this District pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b) and (c).

Defendants reside, transact business, are found, or have agents in this District. Further, a substantial part of the events or occurrences giving rise to the claims alleged occurred in the District.

## PARTIES

7.     Plaintiff QualServ Corporation is a Delaware corporation with its principal place of business in Fort Smith, Arkansas. QualServ Corporation is a subsidiary and affiliate of QualServ Holding Company, f/k/a Food Service Holdings, Inc. During the Class Period (defined below), QualServ Corporation purchased food service equipment component hardware directly from Defendant Kason Industries, Inc., and was damaged as a result of Defendants' unlawful conduct.

8.     Defendant Kason Industries Inc. ("Kason") is a New York corporation with its principal place of business in Newnan, Ga. Kason is the leading manufacturer of commercial refrigeration hardware, including hardware for walk in refrigerators and freezer doors. Kason has nearly 250,000 square feet of manufacturing plants and offices at three locations in Newnan; four additional North America branches located in Lewis Center, Ohio, North Kansas City, Missouri, Oxnard, California, and Shenandoah, Georgia, and distributors around the globe. During the Class Period, Kason sold food service equipment component hardware in this District and throughout the United States.

9.     Defendant Peter A. Katz ("Katz") is the former President of Kason. As President, Katz had overall responsibility for Defendant Kason's performance in the sale of food service component hardware, among other products.  He was employed at Kason from January 24, 1964 to May 29, 2009.  During the Class Period, Katz, through Kason, sold food service equipment component hardware in this District and throughout the United States.

10.    Defendant John Doe 1 is a major commercial and institutional food service equipment component hardware manufacturer referred to in paragraph 4(b) of the plea agreement entered into by Kason with the DOJ on May 19, 2010 (the "Kason Plea Agreement" annexed as Exhibit A).

11.    Various companies and individuals, engaged in producing and selling food service equipment component hardware in the United States, not named as Defendants in this Complaint, also participated as co-conspirators in the acts complained of, and performed acts and made statements in furtherance of the unlawful conduct.

## INTERSTATE TRADE AND COMMERCE

12.    During the Class Period, Defendants and the unnamed co-conspirators sold and shipped food service equipment component hardware in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in states and countries outside the state of origin of the shipments . In addition,

4

payments for such food service component hardware traveled in interstate and foreign commerce.

13. During the Class Period, the business activities of the defendants and co-conspirators in connection with the manufacture and sale of food service equipment component hardware were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## THE RELEVANT MARKET

14. The relevant product market is food service equipment component hardware. The relevant geographic market is the United States.

15. Food service equipment component hardware includes fabricated parts, such as cafeteria hardware, equipment legs and casters, and fabrication supplies, and walk-in refrigeration components, such as metal racks, door hinges, handles, latches, closers and panel fasteners.

16. Customers for food service equipment component hardware include original equipment manufacturers and fabricators, which purchase food service component hardware for use in the final products that they manufacture, and then distribute those final products to dealers and other customers for sale to commercial and institutional food service businesses. These products include commercial kitchen equipment, coolers, freezers, ice makers, ovens, and heated cabinets. Other customers for food service equipment component hardware

include replacement parts distributors and service and maintenance companies,

which repair and maintain food service equipment.  Diagram A represents the

distribution system for food service equipment component hardware :

## Diagram A



## THE CONSPIRACY

17.    This case involves a conspiracy to suppress and eliminate competition

by fixing prices, rigging bids and allocating customers for sale of food service

equipment component hardware in the United States and elsewhere.

18.    Defendants Kason and Katz conspired with the John Doe 1 and with

unnamed co-conspirators between December 1, 2004 until at least December 31,

2008 (the "Class Period"), to fix the prices of, rig bids for, and allocate customers for, food service equipment component hardware.

19.     Defendants, John Doe 1 and the unnamed co-conspirators agreed during meetings and by telephone, facsimile, and e-mail: (a) to allocate customers of food service equipment component hardware and to exchange "protected" customer lists in order to implement and monitor the illegal agreement; (b) not to compete for one another's protected customers either by refraining from submitting prices or bids to certain customers, or by submitting intentionally high prices or noncompetitive bids to certain customers; (c) to exchange prices that had been provided to certain customers so as not to undercut one another's prices; and (d) to sell food service equipment component hardware at collusive, artificially-inflated and noncompetitive prices.

20.     Pursuant to these agreements, Defendants did in fact quote intentionally high prices and submit non-competitive bids to certain customers, or refrained from providing bids.  Defendants then sold food service equipment component hardware to customers in the United States and elsewhere at collusive, artificially-inflated and noncompetitive prices pursuant to the agreements reached.

21.     As a result of these agreements, Defendants accepted payments for sales of food service equipment component hardware at collusive, artificially-inflated and noncompetitive prices.

22.   In or about April 2009, the United States Federal Bureau of Investigation raided Kason's offices.

23.   On May 6, 2010, the DOJ announced that Defendants Kason and Katz had agreed to plead guilty for participating in the conspiracy. Copies of the agreements to plead guilty are annexed to this complaint as Exhibits A and B.

## Effects of the Conspiracy

24.   As a result of Defendants' unlawful conspiracy, prices for food service equipment component hardware have been fixed, raised, maintained, and/or stabilized in the United States and elsewhere during the Class Period.

## OTHER MARKET FACTORS SUPPORT THE EXISTENCE OF THE CONSPIRACY

25.   Various other market factors make the food service equipment component hardware market susceptible to anticompetitive practices and unlawful collusion.

### Significant Barriers To Entry

26.   A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

27.     There are significant barriers to entry in the food service equipment component hardware market.  Entry requires, among other things, that a company incur significant start-up capital expenditures, including that needed for manufacturing facilities, and significant investment in a distribution network.

## Inelastic Demand

28.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small, decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.  Also, goods that form a small share of a larger purchase tend to exhibit inelastic demand, because purchasers are less likely to change consumption patterns when the overall effect of a price increase is small. The cost of food service equipment component hardware, such as a walk-in refrigerator door hinge, is a small component of the overall cost of the equipment itself, such as a walk-in refrigerator.

29.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.

30.    Demand for food service equipment component hardware is relatively inelastic.

## Standardized Product With High Degree Of Interchangeability

31.    When products offered by different suppliers are viewed as interchangeable by purchasers, it is easier for the suppliers to unlawfully agree on the price for the product in question, and it is easier to effectively monitor agreed-upon prices. This makes it easier to form and sustain an unlawful cartel.

32.    Food service equipment component hardware is a commodity, which is interchangeable across manufacturers.

## ANTITRUST INJURY TO PLAINTIFF AND THE CLASS

33.    In forming and effectuating their conspiracy, Defendants, John Doe 1, and their unnamed co-conspirators engaged in anticompetitive practices, the purpose and effect of which were to artificially raise, fix, stabilize and/or or maintain the price of food service equipment component hardware sold in the United States and elsewhere.  These activities included:

(a)    Attending meetings or otherwise engaging in discussions and communications, face-to-face and by telephone, facsimile and electronic mail, regarding the sale of food service equipment component hardware in the United States and elsewhere;

(b)     Agreeing during those meetings, discussions and communications to allocate customers of food service equipment component hardware in the United States and elsewhere;

(c)     Agreeing during those meetings, discussions and communications not to compete for one another's protected customers or to submit intentionally high prices or bids to certain customers;

(d)     Agreeing during those meetings, discussions and communications to exchange prices to customers so as not to undercut one another's prices;

(e)     Agreeing during those meetings, discussions and communications to sell food service equipment component hardware at collusive, artificially-inflated and noncompetitive prices;

(f)     Allocating customers of food service equipment component hardware in the United States and elsewhere;

(g)     Refraining from competing with each other for the allocated customers;

(h)     Intentionally submitting high prices or bids to certain allocated customers, in order to maintain the allocation conspiracy;

(i)     Exchanging prices charged to customers regarding food service equipment component hardware with each other;

(j)     Selling food service equipment component hardware to customers at collusive, artificially-inflated and noncompetitive prices pursuant to the customer allocation agreement reached;

(k)     Accepting payment for food service equipment component hardware at collusive, artificially-inflated and non-competitive prices;

(l)     Authorizing, directing, or consenting to the participation of subordinate employees in the conspiracy;

(m)     Concealing the conspiracy and conspiratorial contacts through various means.

34.     Defendants' unlawful conspiracy had and is having the following effects, among others:

(a)     Price competition in the sale of food service equipment component hardware has been restrained, suppressed, and/or eliminated in the United States and elsewhere;

(b)     Prices for food service equipment component hardware sold by Defendants and their co-conspirators have been fixed, raised, stabilized and/or maintained at artificially high, non-competitive levels in the United States and elsewhere; and

(c)     Customers who purchased food service equipment component hardware directly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

35.     By reason of Defendants' violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, Plaintiff and the Class have sustained injury to their business or property in amounts to be proven at trial.  The injury sustained by Plaintiff and the Class is the payment of artificially-inflated prices to Defendants for food service equipment component hardware during the Class Period.  This is an injury of the type that the antitrust laws were meant to punish, prevent, and redress.

## FRAUDULENT CONCEALMENT

36.     During the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their participation in the conspiracy alleged by holding themselves out as competitors to the public, to Plaintiff, and to the Class.  Because of such fraudulent concealment, and the fact that a price-fixing conspiracy is inherently self-concealing, Plaintiff and the Class could not have discovered the existence of this conspiracy until the DOJ's filing of criminal charges against Defendants and their admission of antitrust violations in the agreements to plea guilty.

37.     Defendants and their co-conspirators wrongfully concealed their conspiracy by various means and methods that precluded detection, including but not limited to, secret meetings, misrepresentations to their customers concerning the reasons that they refrained from accepting or bidding for certain customers, and concerning prices charged for food service equipment component hardware and surreptitious communications among Defendants and their co-conspirators by the use of the telephone, in-person meetings or trade association gatherings (and elsewhere) in order to prevent the existence of written records, limit any explicit reference to competitor pricing communications on documents, and to conceal the existence and nature of their competitor pricing discussions from non-conspirators.

38.     Defendants and their co-conspirators agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal conspiracy.

39.     Defendants and their co-conspirators' purported reasons for refraining from accepting or bidding for certain customers, and for their charging artificially-inflated prices for food service equipment component hardware, were materially false and misleading and were made for the purpose of concealing Defendants' anticompetitive scheme as alleged in this Complaint.

40.     Plaintiff and members of the Class reasonably relied on the materially false or misleading explanations by Defendants for refraining from accepting or

14

bidding for certain customers, and for their charging artificially-inflated prices for food service equipment component hardware. Plaintiff and members of the Class were lulled into believing that Defendants' actions were the result of normal competitive market forces, rather than the product of collusive activity by Defendants and their co-conspirators.

41.    These explanations were designed to, and did, put Plaintiff and Class members off guard and caused them to accept Defendants' actions without undertaking further inquiry, as would any reasonable person under the circumstances. Even had such inquiry been undertaken, it would have proven futile because Plaintiff and members of the Class did not have access to contemporaneous information that would have allowed them to evaluate whether Defendants' claimed justifications for refraining from accepting or bidding for certain customers, and for their charging artificially-inflated prices for food service equipment component hardware were valid.

42.    At the time, Plaintiff and members of the Class considered Defendants' articulated reasons for refusing to accept or bid for certain customers, and for their charging artificially inflated prices for food service equipment hardware during the Class Period to be both normal and legitimate. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legality of Defendants' refusals to accept or bid for certain

customers, and their charges of artificially inflated prices for food service
equipment hardware.

43.     Moreover, by its very nature, Defendants' conspiracy was inherently
self-concealing, and indeed the success of the conspiracy depended on its self-
concealing nature.  At all relevant times and in all relevant respects, Plaintiff and
other members of the Class exercised reasonable diligence.

44.     Because of the active steps Defendants took, including fraudulent
concealment of their conspiracy, to prevent Plaintiff and members of the Class
from suing them for the anticompetitive activities alleged in this complaint,
Defendants are equitably estopped from asserting that any otherwise applicable
limitations period has run.

45.     The running of any applicable statute of limitations has been equitably
tolled as to any claims of Plaintiff and members of the Class as a result of the
anticompetitive conduct alleged in this complaint.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action under Rules 23(a) and
23(b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and the Class.

47.     The Class is defined as:

>       All persons or entities who purchased food service
>       equipment component hardware directly from one or
>       more of the Defendants or their co-conspirators in the

16

United States at any time during the period December 1, 2004 to December 31, 2008 (the "Class Period"). Excluded from the Class are Defendants and their subsidiaries, parents, or affiliates, Defendants' co-conspirators, whether or not named as a Defendant in this Complaint, and government entities.

48.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade or the commerce involved, Plaintiff believes that the members of the Class are geographically dispersed throughout the United States, and that joinder of all members of the Class would be impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, Plaintiff believes that there are at least hundreds of members of the Class, and that their identities can be learned from Defendants' and their co-conspirators' books and records.

49.     Plaintiff's claims are typical of the claims of the other members of the Class. The Plaintiff and members of the Class purchased food service equipment component hardware during the Class Period at artificially maintained, non-competitive prices, established by the unlawful actions of Defendants and their co-conspirators. The Plaintiff and members of the Class have sustained damage in that they paid artificially-inflated prices for food service equipment component hardware during the Class Period due to Defendants' conduct in violation of federal law as set forth below.

17

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

51.     Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants conspired to raise, fix, maintain or stabilize the price of food service equipment component hardware in the United States and elsewhere, which members of the Class purchased;

(b)     the date the conspiracy began;

(c)     the identities of the unnamed co-conspirators;

(d)     whether Defendants' conduct violated the relevant federal antitrust laws and caused injury to the business and property of Plaintiff and the members of the Class and, if so, the proper measure of damages;

(e)     whether Plaintiff and members of the class are entitled to declaratory or injunctive relief; and

(f)     whether Defendants undertook actions to conceal their unlawful conspiracy.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is

18

impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, will achieve substantial economies of time, effort and expense, and will assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

53.    The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical, rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  The amounts at stake for members of the Class, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants.  Plaintiff does not anticipate any difficulty in the management of this action as a class action.

## COUNT ONE

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT

54.    Plaintiff incorporates by reference the preceding allegations.

55.    Defendants and their unnamed co-conspirators entered into and engaged in a conspiracy in unreasonable restraint of trade in violation of Section 1

19

of the Sherman Act and Section 4 of the Clayton Act. The matters complained of are a per se antitrust violation.

56.   The conspiracy consisted of a continuing agreement, understanding or concert of action between and among Defendants and their co-conspirators unreasonably to restrain trade and commerce. In furtherance of the conspiracy, Defendants fixed, raised, maintained, and stabilized prices, rigged bids, and allocated customers for the sale of food service equipment component hardware in the United States and elsewhere. Defendants' conspiracy is a *per se* violation of the federal antitrust laws.

57.   Defendants' conspiracy, and resulting impact on the market for food service equipment component hardware, occurred in or affected interstate and foreign commerce of the United States.

58.   As a proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered injuries in that they have paid artificially-inflated prices for food service equipment component hardware that they purchased directly from Defendants during the Class Period.

## RELIEF SOUGHT

Accordingly, Plaintiff demands judgment as follows:

A.      That the unlawful conspiracy alleged in this Complaint be adjudged and decreed to be an unreasonable restraint of trade or commerce, in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act;

B.      That the Court determine that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed as class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

C.      That Plaintiff and the Class recover the damages determined to have been sustained by them, trebled as provided by law, and that judgment be entered against Defendants, jointly and severally, on behalf of Plaintiff and each and every member of the Class;

D.      Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the conspiracy alleged in this Complaint;

E.      Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

F.     That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law; and

G.     That the Court direct such other and further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated:  June 16, 2010                              Respectfully submitted,

William P. Carr
Georgia Bar No. 112100
PCarr@CarrPalmer.com
10 North Parkway Square
4200 Northside Parkway
Atlanta, GA 30327
Telephone: 404.442.9000
Fax: 404.442.9700

***Local Counsel for Plaintiff***

Jay L. Himes
Hollis Salzman
Kellie Lerner
Ryan G. Kriger
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: 212.907.0700
Fax: 212.818.0477
hsalzman@labaton.com

jhimes@labaton.com
klerner@labaton.com
rkriger@labaton.com

Arthur M. Kaufman
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, OH  44114-2316
Telephone: 216.621.0150
Fax: 216.241.2824
amkaufman@hahnlaw.com

Daniel E. Gustafson
Jason S. Kilene
**GUSTAFSON GLUEK PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: 612.333.8844
Fax: 612.339.6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com

Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312.332.3400
Fax: 312.676.2676
mmiller@millerlawllc.com

W. Joseph Bruckner
Heidi M. Silton
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis MN  55401
Telephone: 612.339.6900
Fax: 612.339.0981
wjbruckner@locklaw.com

hmsilton@locklaw.com

Joseph C. Kohn
**KOHN SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Telephone: 215.238.1700
Fax: 215.238.1968
jkohn@kohnswift.com

***Counsel for Plaintiff and the Proposed Class***